**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bobby Glen Burns, Jr., <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of Social Security Administration, <br><br> Defendant. | No. CV-22-08201-PCT-DGC <br><br> **ORDER** |

Plaintiff Bobby Burns seeks judicial review of the final decision of the Commissioner of Social Security, which denied his claim for disability insurance benefits and supplemental security income. For reasons stated below, the Court will affirm the decision.

**I.     Background.**

Plaintiff is 49 years old, has a high school education, and previously worked as a paper products machine operator and truck stop tire technician. Administrative Transcript ("Tr.") 268, 341, 1992. He applied for disability insurance benefits in May 2018 and supplemental security income in August 2020. Tr. 268-74, 300-06. He alleged disability as of October 5, 2016 due to severe lower extremity pain, diabetes, nerve damage, and depression. Tr. 336-40.

The claim was denied by state agency physicians at the initial and reconsideration levels. Tr. 142-66. A hearing before an Administrative Law Judge ("ALJ") was held in December 2020. Tr. 94-114. The ALJ denied the claim in May 2021 and the Appeals Council denied Plaintiff's request for review. Tr. 17-42, 2080-85. Plaintiff sought judicial review in August 2021. Tr. 2045-52. In December 2021, Judge Diane Humetewa granted the parties' stipulation to remand the case for further administrative proceedings. Tr. 2036-37; *see* Doc. 21, *Burns v. Comm'r of Soc. Sec.*, No. CV-21-08170-PCT-DJH (D. Ariz. 2021).

The ALJ held a new hearing on June 30, 2022, at which Plaintiff and a vocational expert testified. Tr. 2001-28. The ALJ issued another unfavorable decision on August 29, 2022. Tr. 1966-2000. This decision became the Commissioner's final decision when the Appeals Council declined review. *See* Tr. 1967; Doc. 21 at 3.

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Doc. 1. The parties briefed the issues after receipt of the certified administrative transcript. Docs. 15-18, 21, 23-24.

**II.    Standard of Review.**

The Court reviews only those issues raised by the party challenging the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may vacate the decision if it is based on legal error or is not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In determining whether substantial evidence supports the ALJ's decision, the Court must consider the record as a whole and "may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations omitted).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where

"the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**III.     Disability and the Five-Step Evaluation Process.**

Under the Social Security Act, a claimant is disabled if he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Whether the claimant is disabled is determined by a five-step process. The claimant must show that (1) he has not engaged in substantial gainful activity since the alleged disability date, (2) he has a severe impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") – the most he can do with his impairments – precludes him from performing past work. If the claimant meets his burden at step three, he is presumed disabled and the process ends. If the inquiry proceeds and the claimant meets his burden at step four, then (5) the Commissioner must show that the claimant is able to perform other available work given his RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (RFC assessment).[1]

Plaintiff has met his burden at steps one and two. He has not engaged in substantial gainful activity since the alleged disability date, and he has multiple severe impairments, including a right ankle fracture with complex regional pain syndrome, left knee degenerative joint disease, lumbar degenerative disc disease, diabetes mellitus with

---

[1] An impairment is "severe" if it significantly limits the ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities – the abilities and aptitudes necessary to do most jobs – include physical functions such as sitting, standing, walking, lifting, carrying, reaching, and handling; capacities for seeing, hearing, and speaking; understanding, remembering, and carrying out instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(c), 416.922(c).

3

neuropathy, hypertension, asthma, obesity, major depressive disorder, and anxiety disorder. Tr. 1972.[2]

The ALJ found at step three that Plaintiff's impairments do not constitute a listed impairment. Tr. 1973-76. Plaintiff does not challenge this finding.

The ALJ determined at step four that Plaintiff has the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift and carry, push and pull 10 pounds occasionally and five pounds frequently; can stand and walk for 2 hours of an 8-hour workday; can sit for 6 hours of an 8-hour workday; can occasionally stoop, climb ramps and stairs, and balance, can never kneel, crawl, crouch, or climb ladders, ropes, or scaffolds. This individual can frequently reach bilaterally but only occasionally reach overhead. He must avoid concentrated exposure to extreme cold, extreme heat, humidity, pulmonary irritants, and vibrations, and must never be exposed to unprotected heights or moving, unprotected machinery. He can understand, remember, and carry out simple tasks but not at an assembly line rate; can make simple work-related decisions; can have frequent work-related interactions with supervisors and occasional work-related interactions with coworkers and the general public; and can have occasional changes in the work setting.

Tr. 1977. The ALJ found that this RFC precludes Plaintiff from performing his past work as a machine operator and tire technician because it limits him to a reduced range of sedentary work. Tr. 1990.[3]

Based on Plaintiff's RFC, relevant vocational factors, and testimony from the vocational expert, the ALJ determined at step five that Plaintiff can perform the jobs of assembler, inspector, and trimmer. Tr. 1990-91. The ALJ therefore found Plaintiff not disabled within the meaning of the Social Security Act. Tr. 1992.

---

[2] The ALJ found Plaintiff's right elbow fracture in November 2019 to be a non-severe impairment. Tr. 1972-73; *see* 20 C.F.R. §§ 404.1522(a), 416.922(a).

[3] To determine the physical requirements of work in the national economy, the Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. Sedentary work involves sitting with occasional standing or walking (up to two hours), lifting no more than 10 pounds, and occasionally lifting or carrying items like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a).

## IV. Discussion.

Plaintiff contends that the ALJ erred by failing to properly evaluate the opinions of his treating physicians, Drs. Paul Yamaguchi and Chelsea Presbrey. Docs. 21 at 13-21, 24 at 3. Defendant argues that the ALJ committed no harmful legal error and his decision is supported by substantial evidence. Doc. 23 at 8-16.

### A. Evaluation of Medical Opinions.

"When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at 'face value.' Rather, the ALJ must scrutinize the various – often conflicting – medical opinions to determine how much weight to afford each opinion." *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. 2024) (quoting *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)).

For claims filed before March 27, 2017, the social security regulations require an ALJ "to assess medical opinions 'based on the extent of the doctor's relationship with the claimant.'" *Id.* at 1214 (quoting *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022)); *see* 20 C.F.R. §§ 404.1520, 416.920. "To reject either a treating or an examining physician's opinion, an ALJ must provide 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise[.]" *Woods*, 32 4th at 789 (citations omitted).

Because Plaintiff filed his claim after March 27, 2017, revised regulations regarding the evaluation of medical opinions apply. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. "The revised regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinions." *Cross*, 89 F.4th at 1214 (citation omitted). Indeed, this Circuit made clear in *Woods* that the revised regulations "are clearly irreconcilable" with its longstanding treating source rule, which categorized medical opinions in a three-tiered hierarchy that "accord[ed] special deference to the opinions of treating and examining physicians on account of their relationship with the claimant" and less weight to the opinions of physicians who only review the record. 32 F.4th at 792.

Under the revised regulations, an ALJ's reasons to discredit a medical opinion "must simply be supported by substantial evidence." *Id.* at 787. There is no "inherent persuasiveness" to opinions from either a claimant's own medical sources or government consultants. *Id.* at 791. The most important factors are "supportability" and "consistency." *Id.* "Supportability" is "the extent to which a medical source supports the medical opinion by explaining the 'relevant objective medical evidence.'" *Id.* at 791-92 (quoting § 404.1520c(c)(1)). "Consistency" is "the extent to which a medical opinion is 'consistent with the evidence from other medical sources and nonmedical sources[.]'" *Id.* at 792 (quoting § 404.1520c(c)(2)).[4]

Even under the new regulations, however, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation[.]" *Woods*, 32 4th at 792. The ALJ "must articulate how persuasive [he] finds all of the medical opinions from each doctor or other source, and explain how [he] considered the supportability and consistency factors in reaching these findings." *Id.* (citing § 404.1520c(b)) (cleaned up); *see* 82 Fed. Reg. at 5858 (explaining that the new regulations set forth a "minimum level of articulation" necessary for "decisions to provide sufficient rationale for a reviewing adjudicator or court").

### B.     The Opinions of Drs. Yamaguchi and Presbrey.

On August 9, 2018, Dr. Yamaguchi completed a check-box form regarding Plaintiff's ability to do work-related activities. Tr. 592-94 (Ex. B4F). He opined that during an eight-hour workday Plaintiff could sit for two hours, up to 30 minutes at a time; stand for two hours, but only ten minutes at a time; occasionally lift and carry five pounds, but rarely ten pounds; occasionally reach but rarely stoop, squat, crawl, and climb; occasionally use his hands to handle or grip things and push and pull controls; frequently engage in fine manipulation with the hands and fingers; never use his feet for repetitive movements; and not sustain exposure to unprotected heights, moving machinery,

---

[4] An ALJ may discuss other factors such as the medical source's specialization or relationship with the claimant, but has no obligation to do so. *See Woods*, 32 4th at 792; *Cross*, 89 F.4th at 1214; 20 C.F.R. § 404.1520c(b)(2), (c)(3)-(4).

respiratory irritants, or extreme temperatures changes. Tr. 592-93.[5] Dr. Yamaguchi further opined that Plaintiff would be off task at least fifteen percent of the time due to severe pain and fatigue. Tr. 594.

Dr. Presbrey completed an assessment of Plaintiff's ability to do work-related activities on January 2, 2020. Tr. 1030-32 (Ex. B10F). She opined that during an eight-hour workday Plaintiff could sit for two hours, up to 30 minutes at a time; stand for two hours; occasionally lift five pounds and carry ten pounds; occasionally reach but rarely stoop, squat, crawl, and climb; occasionally use his hands to handle or grip things and push and pull controls; frequently engage in fine manipulation with the hands and fingers; never use his feet for repetitive movements; and not sustain exposure to unprotected heights, moving machinery, respiratory irritants, or extreme temperatures changes. Tr. 1030-31. Dr. Presbrey also opined that Plaintiff would be off task fifteen percent or more of time due to severe pain and fatigue. Tr. 1032.

The ALJ found these opinions to be only partially persuasive. Tr. 1989. Plaintiff contends that the ALJ erred in this regard. Doc. 21 at 14-20. The Court does not agree.

The ALJ provided this explanation for giving partial weight to Dr. Yamaguchi's opinion:

> Dr. Yamaguchi's opinion that the claimant could stand and walk for two hours in an eight-hour workday and never squat, crawl or climb ladders, ropes or scaffolds, is supported by the claimant's history of right ankle pain and Dr. Yamaguchi's own treatment records (Exhibit B7F/67, 112, 147). However, the remainder of his opinion is not supported by the record. Dr. Yamaguchi's manipulative limitations are not supported by objective evidence, which shows the claimant's right elbow fracture healed in just a few months (Exhibits B13F/29 and B14F/26). The claimant has not sought or received any other treatment for upper extremity-related symptoms. Additionally, Dr. Yamaguchi's off task limitation is inconsistent with Dr. Belton's examination findings, which showed only mild cognitive limitations (Exhibit B11F/1-7). Dr. Yamaguchi apparently relied quite heavily on the subjective report of symptoms and limitations provided by the

---

[5] For an eight-hour workday, "rarely" is defined as 0-5%, "occasionally" means 6-33%, and "frequently" equals 34-66%. Tr. 592; *see* SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983).

7

> claimant, which are not entirely supported by or consistent with the full record, which documents that the claimant has reported being physical[ly] active, caring for dogs, accomplishing his activities of daily living, and riding a minibike monthly.

Tr. 1989. The ALJ provided similar reasons for discounting Dr. Presbrey's opinion:

> Dr. Presbrey's opinion about the claimant's ability to stand and walk for two hours in an eight-hour workday is supported by the claimant's treatment records for his right ankle (Exhibits B7F/67, 112, 147). However, the remainder of Dr. Presbrey's opinion is an overstatement of the claimant's functional limitations. Her opinion about manipulative limitations is not supported by objective evidence (Exhibits B13F/29 and B14F/29). Additionally, her off-task limitation is inconsistent with the examination findings of Dr. Belton, as well as the claimant's recent psychiatric treatment records (Exhibits B11F/1-7 and B26F/13-14). It appears Dr. Presbrey, like Dr. Yamaguchi, also relied heavily on the subjective report of symptoms and limitations provided by the claimant, which, as already explained, are not entirely supported by or consistent with the full record.

*Id.*

Plaintiff contends that the ALJ mischaracterized evidence in rejecting the manipulative limitations and finding that the right elbow fracture had healed in a just few months. Doc. 21 at 16-17. This is not entirely correct.

Plaintiff fractured his right elbow on two separate occasions. In 2012, he fell and suffered a medial coronoid fracture. Tr. 956-57. Plaintiff fell and injured his right elbow again on November 3, 2019. Tr. 875. Imaging revealed distal humerus and radial head fractures. Tr. 877, 951, 957, 1343, 1144.[6]

The ALJ considered the November 2019 fracture in determining whether Plaintiff's impairments are severe. Tr. 1972-73. The ALJ explained:

---

[6] The elbow joint is made up of three bones: the humerus (upper arm bone), the radius (forearm bone on the thumb side), and the ulna (forearm bone on the pinky side). The coronoid is a triangular process projecting from the anterior portion of the ulna, which acts as a bony buttress to prevent posterior elbow dislocation. *See* National Institutes of Health, National Library of Medicine (PubMed Central), *Coronoid Fractures of the Elbow*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2442031/ (last visited Feb. 7, 2024). The radial head is the knobby end of the radius where it meets the elbow joint. *See id.*, *Radial Head Fractures*, https://www.ncbi.nlm.nih.gov/books/NBK448140/.

8

> Lastly, I have considered the claimant's right elbow impairment. In November 2019 the claimant fell and suffered an injury to his right elbow. He visited the emergency room and his examination revealed some joint effusion, tenderness, and limited range of motion. An x-ray of his elbow also showed a radial head impact fracture and mild to moderate degeneration of the ulnotrochlear joint (Exhibit B8F/24-30). A few days later the claimant was re-examined. He had limited range of motion and he was placed in a sling, but he denied having any pain (Exhibit B8F/103, 111). Another x-ray of his elbow in February 2020 showed some residual degeneration but his fracture was well healed (Exhibit B13F/29 and B14F/26). At the hearing, the claimant testified that he continues to experience occasional right elbow and shoulder pain since this injury. He also reported that he is right hand-dominant (Testimony). However, there is no evidence that the claimant has sought or received any medical treatment for his right elbow since early 2020 and there is no objective evidence that this impairment is currently resulting in more than minimal limitations.

Tr. 1973.

As noted, the ALJ also relied on the fact that the November 2019 fracture had healed in finding that objective evidence did not support the manipulative limitations identified by Drs. Yamaguchi and Presbrey. Tr. 1989. According to Plaintiff, the ALJ confused his 2012 elbow fracture with the more recent fracture in 2019. Doc. 21 at 16-17. Plaintiff cites to a medical report dated November 12, 2019 that discusses the two fractures. *Id.* The report notes that Plaintiff has a "history of fall and fracture to [his] right elbow back in 2012" that "healed well[.]" Tr. 956-57 (also mentioning the "old healed medial coronoid fracture").

The ALJ, however, cited a different medical record – a February 19, 2020 x-ray report – in finding that the November 2019 fracture had "healed in just a few months." Tr. 1989 (citing Ex. B14F/26 (Tr. 1155)). That report revealed the "healing of the previously seen fractures of the distal humerus and radial head" with "[n]o new fractures." Tr. 1155; *see also* Tr. 1468 (related orthopedic visit report noting that the x-rays "show continued healing of a previously seen fracture in the distal humerus and radial head"). Contrary to Plaintiff's assertion (Doc. 21 at 16-17), the "previously seen fractures" do not refer to the old medial coronoid fracture from 2012. Instead, the previously seen fractures were those

9

of the distal humerus and radial head revealed in imaging taken in November 2019 and January 2020. *See* Tr. 877 (November 6, 2019 x-ray report noting that "imaging is suggestive of occult radial head fracture"); 949-51 (noting that x-rays taken during the emergency room visit show a "fracture of lower right end of humerus"); 957 ("X-rays on 11/6/2019 show an impacted radial head fracture"); 1144 (January 3, 2020 x-ray report noting that "lucencies in the posterior aspect of the distal humerus and in the radial head are less apparent on today's exam"); 1155 (February 19, 2020 x-ray report showing "healing of the previously seen fractures of the distal humerus and radial head"); 1468 (February 19, 2020 doctor visit notes indicating that x-rays "show continued healing of a previously seen fracture in the distal humerus and radial head").[7]

What is more, Plaintiff does not dispute the ALJ's finding that he received no treatment for right elbow symptoms after early 2020. Tr. 1973, 1989. During an orthopedic visit on January 3, 2020, Plaintiff reported that "his pain is gradually improving and he . . . is doing better overall." Tr. 1343. He had some stiffness in the right elbow and experienced an uncomfortable pop when moving it, but denied any tingling, numbness, or loss of sensation. *Id.* The physical exam showed no significant swelling or pain with range of motion, although the elbow remained tender to palpitation at the radial head which "was not as severe as previous." *Id.* Six weeks later, on February 19, 2020, Plaintiff reported that he had no elbow pain and the popping had resolved. Tr. 1465. The physical exam showed no tenderness at the radial head and no significant pain with range of motion. *Id.* Plaintiff was advised to ease back into normal activities, which would resolve some minor tingling and numbness in the fingers from wearing a sling, and to follow-up as needed. Tr. 1466. No medical record shows that Plaintiff sought treatment for his right elbow after

---

[7] Plaintiff is correct that the ALJ also mistakenly cited a report regarding his left knee impairment. Doc. 21 at 16; *see* Tr. 1989 (citing Ex. B13F/29 (Tr. 1123)). But this error is harmless given the other valid reasons the ALJ provided for giving partial weight to the opinions of Drs. Yamaguchi and Presbrey. *See Carolyn M. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-CV-01715-HZ, 2023 WL 6620253, at *6 (D. Or. Oct. 6, 2023) ("The ALJ erred in stating that the examination occurred shortly after the stroke. The error was harmless because the ALJ gave other valid reasons to discount Dr. Trueblood's opinion.") (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

February 2020.  *See* Doc. 21 at 4-12 (discussing medical records).  Plaintiff has not shown that the ALJ erred in finding that his 2019 elbow fracture healed in just a few months and resulted in no additional medical visits.

In completing their assessments of work-related abilities, Drs. Yamaguchi and Presbrey provided no remarks about Plaintiff's functional limitations.  Tr. 594, 1032.  They instead indicated that their assessments were based on unidentified medical records, unidentified clinical observations, and general knowledge about the diseases and disorders presented.  *Id.*  The ALJ explained that the doctors apparently relied quite heavily on Plaintiff's subjective reports of symptoms and limitations, which are not entirely supported by or consistent with the full record.  Tr. 1989.  As the ALJ noted, the record shows that, during the relevant period, Plaintiff engaged in various physical activities such as going to the gym, hiking and climbing, and riding a minibike.  Tr. 1980 (citing Ex. B9F/9); Tr. 1981 (same); Tr. 1982 (citing Exs. B20F/7, B25F/8); Tr. 1986 (citing Exs. B9F/9, B12F/24); *see also* Doc. 23 at 11-12 (citing records).  The ALJ did not err in discounting the opinions of Drs. Yamaguchi and Presbrey given their reliance on Plaintiff's doubtful statements about his symptoms and limitations.  *See Lisa L. v. Kijakazi*, No. 1:20-CV-494-SI, 2021 WL 3663068, at *8 (D. Or. Aug. 18, 2021) ("Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings.") (citations omitted); *Jonathan L. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-CV-1419-MO, 2023 WL 5176337, at *7 (D. Or. Aug. 11, 2023) ("The ALJ also reasonably considered that Mr. Tash's opinion was overly reliant on Plaintiff's subjective complaints.  'An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.'") (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).[8]

---

[8] At the June 30, 2022 hearing, Plaintiff testified that he has severe and chronic pain in his lower back, legs, and ankle, and that he can lift and carry only five pounds, stand and sit for five minutes at a time, and walk about 10-15 feet.  Tr. 2009-15.  Plaintiff does not

Plaintiff asserts that the ALJ erred by not discussing certain findings about his right elbow made by physician assistant Sarah Lybrand on January 3, 2020. Doc. 21 at 17 (citing Tr. 1343-46 (Ex. B14F/214-17)). But "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). This is particularly true here because the ALJ found the right elbow impairment to be non-severe (Tr. 1973), a finding Plaintiff does not challenge. Moreover, at the follow-up visit in February 2020, Plaintiff reported no elbow pain and the physical exam was unremarkable:

> Examination of the right elbow reveals no obvious deformity, swelling, or concerning skin lesions. No tenderness to palpitation at the radial head. Range of motion on the right measured by goniometer was 0 to 120 degrees. Range of motion on the left was 0 to 127 degrees. He has full and equal pronation and supination. He has no significant pain with elbow range of motion. Negative Tinel's [test] at the elbow. He is neurovascularly intact to light touch and motor distally.

Tr. 1465. Plaintiff has not shown that the ALJ committed harmful error by not discussing Ms. Lybrand's report.

As discussed, the ALJ's conclusion must be upheld where a rational interpretation of the evidence supports the ALJ's decision. *Thomas*, 278 F.3d at 954. Plaintiff essentially asks the Court to overrule the ALJ's rational conclusion. The Court declines to do so. *See Jaime v. Kijakazi*, No. 1:21-CV-01672-SKO, 2023 WL 2466196, at *11 (E.D. Cal. Mar. 10, 2023) ("Plaintiff appears to be advocating for an alternative interpretation of the evidence regarding how pain affected his ability to use the left upper extremity. The Court will not second-guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff."); *Juarez v. Colvin*, No. CV 13-2506 RNB, 2014 WL 1155408, at *2 (C.D. Cal. Mar. 20, 2014) ("It is not the Court's role to second-guess an ALJ's rational interpretation of the evidence merely because plaintiff is able to proffer an alternative rational interpretation.").

---

challenge the ALJ's finding that his statements about the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 1978.

The Court also finds that, contrary to Plaintiff's assertion (Doc. 21 at 14), the ALJ's decision easily "clear[s] the low substantial evidence bar." *Ford*, 950 F.3d at 1159; *see Biestek*, 139 S. Ct. at 1154, 1157 (the "substantial evidence" threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close"); *Esparza v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00142-PHX-DJH, 2021 WL 527378, at *6 (D. Ariz. Feb. 12, 2021) ("Because substantial evidence is a relatively low evidentiary threshold, the ALJ's conclusion is entitled to deference"); *Minnifield v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00913-PHX-MTL, 2021 WL 100105, at *3 (D. Ariz. Jan. 12, 2021) ("Ultimately, the evidence on [the] issue [of improvement with treatment] points in either direction.  Because substantial evidence is a relatively low evidentiary threshold and highly deferential, the ALJ's interpretation of the evidence was reasonable.") (citation omitted).

**V.      Conclusion.**

Having carefully reviewed the ALJ's decision and the record as a whole, the Court finds that the decision is supported by substantial evidence and not based on harmful legal error.  The decision therefore will be affirmed.

**IT IS ORDERED:**

1.      The final decision of the Commissioner of Social Security to deny Plaintiff's claim for disability insurance benefits and supplemental security income (Tr. 1966-2000) is **affirmed**.

2.      The Clerk of Court shall enter judgment accordingly.

Dated this 13th day of February, 2024.

David G. Campbell
Senior United States District Judge